Oscar R. HAYNES, Jr.; Mary Darby; Ramona Owens; Claudine Haynes; Marina Haynes; Oscar R. Haynes III; and Machelle Haynes–Shake, Plaintiffs–Appellants,

v.

UNITED STATES of America; James G. Watt, Secretary of the Interior; Robert F. Burford, Director, Bureau of Land Management; Beaumont C. McClure, Director, Alaska Programs Staff, Bureau of Land Management; Curtis V. McVee, State Director, Bureau of Land Management, Alaska; Keith M. Schreiner, Regional Director, United States Fish and Wildlife Service, Region VII, Alaska; and Jacob Lestenkof, Area Director, Bureau of Indian Affairs, Alaska Region, Defendants–Appellees.

No. 88–3944.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1989.

Decided Dec. 7, 1989.

James Burling, Pacific Legal Foundation, Sacramento, Cal., for plaintiffs-appellants.

Sarah P. Robinson, Atty., Dept. of Justice, Washington, D.C., for defendants-appellees.

Before O'SCANNLAIN, LEAVY and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## I

Appellants appeal a grant of summary judgment upholding the Secretary of the Interior's interpretation of the Alaska Native Claims Settlement Act ("ANCSA"), 43 U.S.C. § 1613(h) (1982). The Secretary determined the language of 43 U.S.C. § 1613(h) granted him the discretion to limit the allocation of lands to Alaska Natives to less than the statutory maximum of 160 acres where the lands claimed were part of a National Wildlife Reserve. We defer to the Secretary's interpretation, which we view as reasonable, supported by statutory language, and not inconsistent with the Act's purpose as revealed by its legislative history. Accordingly, we affirm.

## II

### BACKGROUND

On November 26, 1973, Elizabeth M. Haynes, an Alaska Native living on Chisik Island, Alaska, applied to the Bureau of Land Management (BLM) for a "primary place of residence" on Chisik Island under the ANCSA, 43 U.S.C. §§ 1601–1629a. Chisik Island is a Wilderness Area desig-

nated as the Tuxedni National Wildlife Reserve. The ANCSA provides in pertinent part:

> (5) The Secretary may convey to a Native, upon application within two years from December 18, 1971, the surface estate in not to exceed 160 acres of land occupied by the Native as a primary place of residence on August 31, 1971. Determination of occupancy shall be made by the Secretary, whose decision shall be final ...;
>
> . . . .
>
> (7) The Secretary may withdraw and convey lands out of the National Wildlife Refuge System and out of the National Forests, for the purposes set forth in paragraph[ ] ... (5) of this subsection section.
>
> . . . .

43 U.S.C. § 1613(h)(5) & (7).

The original applicant, Elizabeth Haynes, died on January 2, 1978. The Bureau of Indian Affairs (BIA) subsequently concluded that Elizabeth Haynes had satisfied all the criteria for a transfer of 160 acres on Chisik Island and recommended transfer of all 160 acres to her heirs.

On November 10, 1980, the United States Fish and Wildlife Service filed an appeal with the Alaska Native Claims Appeal Board (ANCAB) objecting to the transfer. On January 14, 1981, then-Secretary of the Interior Andrus took personal jurisdiction of the appeal, pursuant to 43 C.F.R. § 4.5 (1988), and overturned the BIA's decision. Secretary Andrus reduced the Hayneses' primary place of residence entitlement from 160 acres to four acres in fee and a special use permit for the remaining 156 acres.

The January 14th decision was made before the ANCAB certified the record to the Secretary's office on March 18, 1981. Secretary Andrus stated that, for purposes of the January 14th decision only, he would rely only upon the BIA report and Mrs. Haynes's application. At the time of the decision, the Hayneses did not have notice of the basis for the Fish and Wildlife Service's appeal, although they did know that such an appeal had been lodged; nor did they have notice that the Secretary had assumed jurisdiction over the appeal. Furthermore, they were denied any opportunity for a hearing prior to the Secretary's decision.

On February 18, 1981, the Haynes filed motions for reconsideration of the Secretary's decision. On April 1, 1982, the Acting Secretary of the Interior, Donald Paul Hodel, reconsidered the decision and issued a final order affirming Andrus's January 14th decision. The district court found that at the time the reconsideration decision was made, Acting Secretary Hodel had the entire agency file before him.

The Hayneses filed a complaint with the United States District Court for the District of Alaska in October, 1983, seeking to overturn the Secretary's decision. In November, 1983, District Court Judge Holland denied the Hayneses' motion for summary judgment, but to cure the procedural errors of the Secretary, he remanded the case to Secretary Hodel with instructions to "reconsider his decision herein on the extant administrative record." A dispute arose regarding what the term "extant administrative record" should include. The plaintiffs believed that the record should only include those documents that were before Secretary Andrus on the original January 14, 1981 decision (only the BIA report and Mrs. Haynes's application). The Secretary contended that the agency case file should form the basis of the decision. The district court clarified its November 15th order with a further order of July 1, 1986, to ensure that the "entire case file" be considered in the decision. Following this order, the parties submitted briefs, and on October 2, 1986, Secretary Hodel issued the remand decision.

Secretary Hodel found that the permissive language of ANCSA gave the Secretary discretion to convey less than 160 acres even though Mrs. Haynes had shown residence on the entire 160 acres, and that it was appropriate to convey only four acres in fee to the Hayneses with a special use permit for the remaining 156 acres in

light of the competing interests of the Wildlife Refuge on the Island.

This decision was filed with the United States District Court for the District of Alaska prompting yet another dispute over what comprised the proper administrative record. The Hayneses persisted in their view that the record consisted only of the application and the BIA report. The district court again denied the Hayneses' motion to limit the record to the application and BIA report and found that the file was available to the Secretary, and properly formed part of the record for the remand decision.

Both sides filed cross-motions for summary judgment. On March 17, 1988, the district court granted the United States' motion stating that the Secretary's interpretation of the statute was reasonable and the court was not free to substitute its own interpretation for that of the Secretary.

### III

### ANALYSIS

Appellants argue that the Secretary relied upon materials that were not properly in the record in reaching his October 2, 1986 opinion. According to their theory, since the ANCAB had not certified the record to the Secretary prior to his decision, the only part of the record properly before the Secretary was Mrs. Haynes's application and the BIA report (which recommended that she be awarded all 160 acres). They argue that since Andrus relied upon this limited record for the original decision, Hodel is bound to use the same limited record to make the remand decision.

Appellants cite *Kunaknana v. Clark*, 742 F.2d 1145 (9th Cir.1984) and *Wisconsin Elec. Power Co. v. Costle*, 715 F.2d 323 (7th Cir.1983) for the proposition that the administrative record for review consists of those materials *actually used by the decision maker*. Since the complete record was not before Secretary Andrus when he made his January 14th decision, they believe that any other materials used in the decision on reconsideration would amount to an improper ex parte contact.

■ This argument lacks merit. While it may be true that the entire record was not before the Secretary for the original decision, the Hayneses misstate the rule in *Kunaknana;* the proper interpretation is that the administrative record consists of those materials in the agency record *at the time the decision was made.* 742 F.2d at 1149. At the time the decision was made, the agency case file contained all those documents relied upon in subsequent decisions. Moreover, the district court acknowledged there were problems with the original decision. This is why the case was remanded to the Secretary. Any complaint appellants had with the record before Andrus is now irrelevant because the decision has been remade based upon the entire record.

The record was in existence at the time the original decision was made. It was used in both the reconsideration decision and the remand decision and is therefore the proper record for judicial review. *Kunaknana*, 742 F.2d at 1149.

### *Secretary's Discretion*

■ A decision of the district court regarding statutory construction is a ruling of law, and as such is reviewed *de novo* by this court. *State of Alaska v. Lyng*, 797 F.2d 1479, 1481 (9th Cir.), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1986). If the intent of Congress as evidenced in the statute is clear, this court must give effect to that intent. *Cook Inlet Native Ass'n v. Bowen*, 810 F.2d 1471, 1473 (9th Cir.1987). The interpretation of a statute by an agency charged with its administration is granted substantial deference. *See Chevron U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). As this court has stated, "[t]he principal responsibility for administering the [ANCSA] lies with the Secretary and his interpretation of the statutes are entitled to 'great' weight upon judicial review." *Doyon, Ltd. v. Bristol Bay Native Corp.*, 569 F.2d 491, 496 (9th Cir.1978); *see also City of Angoon v. Hodel*, 803 F.2d 1016, 1026 (9th Cir.1986) (deference given

to Secretary's interpretation of ANCSA). Regardless of whether it is the better interpretation, a reasonable interpretation must be upheld. *Trinity County Public Utilities Dist. v. Harrington,* 781 F.2d 163, 165 (9th Cir.1986).

Under the Secretary's interpretation of 43 U.S.C. § 1613(h)(5) & (7), the use of the word "may" confers discretion upon the Secretary to allocate fewer than 160 acres in this case due to his concurrent obligation to protect the National Wildlife Refuge. So long as the Secretary's interpretation is reasonable, his interpretation must be upheld by this court. *Kunaknana,* 742 F.2d at 1150; *see also NL Industries v. Secretary of Interior,* 777 F.2d 433, 440 (9th Cir.1985).

■ The Hayneses argue that the "may" was only intended to be enabling language inasmuch as it empowers the Secretary to carry out mandatory as well as discretionary parts of the Act. This argument is significantly impaired by the fact that the first sentence in section 14(h) begins, "[t]he Secretary is authorized to withdraw and convey," language that clearly was intended to enable the Secretary to carry out the enumerated objectives of the Act. A statute should not be construed to be repetitive where there is another plausible interpretation. *See Co Petro Marketing v. Commodity Futures Trading Commission,* 680 F.2d 566, 569–70 (9th Cir.1982) (statutes should not be construed to render any provision surplusage).

■ The Hayneses also rely upon the ANCSA's historical predecessor for the proposition that the Secretary's duty to convey is mandatory once residency is determined. They buttress this claim with a canon of construction that construes ambiguous statutes in favor of the Indians or Natives. While this court has recognized this canon of construction, *Escondido Mut. Water Co. v. F.E.R.C.,* 692 F.2d 1223, 1236–37 (9th Cir.1982), *aff'd in part, rev'd in part on other grounds, sub nom. Escondido Mut. Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 104 S.Ct. 2105, 80 L.Ed.2d 753 (1984), it has also declined to apply it in light of competing deference given to an agency charged with the statute's administration, *Shields v. United States,* 698 F.2d 987, 991 (9th Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 73, 78 L.Ed.2d 86 (1983). Furthermore, the previous statute is not enlightening as to interpretation of this section.

"Statutory language is generally construed according to the plain meaning of the words used by Congress." *City of Edmonds v. U.S. Dept. of Labor,* 749 F.2d 1419, 1421 (9th Cir.1984). "The word 'may' usually implies some degree of discretion." *United States v. Rodgers,* 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983). However, the plain meaning of the word may be defeated by a contrary legislative intent. *Id.*

The best that can be said of the legislative history of 43 U.S.C. § 1613(h) is that it is ambiguous. The House Conference Report, in summarizing the ANCSA's land settlement provision, states, "[t]he surface estate in not more than 160 acres *will* be conveyed to each individual Native who has a principal place of residence outside the village areas." (Emphasis added). H.R. Conf.Rep. No. 746, 92nd Cong., 1st Sess., *reprinted in* 1971 U.S.Code, Cong. & Admin.News 2192, 2247–48. In the precursor to section 14 of ANCSA, identified as S.35, Congress originally used the word "shall" in the section that became section 14(h)(5). Thus, it would appear that originally Congress considered making the Secretary's duties mandatory. However, in Conference Committee "shall" was changed to "may," and no explanation was given for the change. Sutherland Statutory Construction states, "[i]f the bill was originally introduced containing a permissive verb and finally passed containing an imperative verb, or vice versa, the verb in the final bill prevails and carries its ordinary meaning." 2A Sutherland Statutory Construction, § 57.05, at 652 (C. Sands 4th ed. 1984).

Furthermore, Congress used the two terms "shall" and "may" in the same section. When, in drafting a statute, Congress uses both "may" and "shall," the normal inference is that each is being used in its ordinary sense—the one being per-

missive, the other mandatory. *Anderson v. Yungkau,* 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947); *see also United States v. Thoman,* 156 U.S. 353, 359–60, 15 S.Ct. 378, 380–81, 39 L.Ed. 450 (1895).

Another consideration cited by the Secretary to support his interpretation is that there is a finite amount of land available to be dispersed under the program (2 million acres), and he must be wary of overselection. The Hayneses argue that his reliance upon this creates a material question of fact, and the case should be remanded for a determination on whether such a problem exists. However, the Secretary's position—that he must consider the possibility of overselection—is still valid even if there has not been an overselection problem to date.

Given the ambiguous legislative history and the plain meaning of the word "may," it cannot be said that the Secretary's interpretation is unreasonable or flies in the face of congressional intent. Therefore, the district court was correct in upholding the Secretary's interpretation.

### Abuse of Discretion

The question of whether the Secretary acted arbitrarily or capriciously or abused his discretion is reviewed by this court *de novo. Dredge Corp. v. Conn.,* 733 F.2d 704, 707 (9th Cir.1984). It cannot be said that the Secretary's decision to grant only four acres in fee [1], accompanied by a special use permit for 156 acres is not supported by the record. Such a decision is reasonable based upon the competing interests of the wildlife refuge upon the island.

The decision of the district court is AFFIRMED.

---

**1.** The Secretary's authority to grant a special use permit was not questioned by the parties, and accordingly, we do not address the issue.