Jane DOE, et al., Plaintiffs-Appellants,

v.

Barbara BLUM, individually and as Commissioner of the New York State Department of Social Services, et al., Defendants-Appellees.

No. 449, Docket 83–6034.

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1983.

Decided Feb. 24, 1984.

police.

Lynn Martell, New York City (Janet M. Calvo, Washington Square Legal Services, Inc., New York City, on the brief), for plaintiffs-appellants.

Stanley A. Camhi, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., New York City, on the brief), for defendant-appellee Barbara Blum.

Margaret G. King, New York City (Frederick A.O. Schwarz, Jr., Corp. Counsel, Michael Gage, New York City, on the brief), for defendant-appellee James Krauskopf.

Jane E. Booth, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., Michael H. Dolinger, Asst. U.S. Atty., New York City, on the brief), for defendant-appellee Margaret M. Heckler.

Before TIMBERS, VAN GRAAFEILAND and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal challenges the administration of the family planning services component of New York State and City programs for Aid to Families with Dependent Children ("AFDC") and Medicaid. Plaintiffs-appellants, four sexually active teenagers, appeal from the December 16, 1982, judgment of the District Court for the Southern Dis-

trict of New York (Vincent L. Broderick, Judge) dismissing their complaint against state and city welfare administrators for failure to state a legally sufficient claim for relief.[1] Plaintiffs' principal claim is that by giving a Medicaid identification card and sending family planning services information only to the head of a household, state and city defendants are violating various provisions of the Social Security Act, 42 U.S.C. § 301 *et seq.* (1976 & Supp. V 1981), and the Constitution. For reasons that follow, we affirm the dismissal of the complaint.

I

Plaintiffs reside in households that receive AFDC benefits and are thereby eligible for Medicaid assistance. In their amended complaint, they allege that they (1) are sexually active and desire information about family planning and abortion services under the Medicaid and AFDC programs, (2) have never received that information, (3) have never been informed by the respective heads of their households of their entitlement to Medicaid reimbursed family planning services and supplies, and (4) are unable to use any of the family planning services and supplies because they do not have their own Medicaid identification card and cannot obtain the use of their parents' card.[2]

Plaintiffs claim that the New York state and city practice of issuing Medicaid cards and distributing family planning services information to the head of a household, rather than directly to all sexually active members of a household, violates the requirements of the Social Security Act

("Act") that "in all appropriate cases" family planning services and information be "offered" and "provided" to sexually active AFDC and Medicaid recipients of child bearing age. 42 U.S.C. § 602(a)(15)(A) (Supp. V 1981) (AFDC); 42 U.S.C. §§ 1396a(a), 1396b(a)(5), and 1396d(a)(4)(C) (1976 & Supp. V 1981) (Medicaid). Plaintiffs also claim that mailing information to heads of households but not all household members violates the Equal Protection Clause and that the failure to give them their own Medicaid identification card provides the head of the household with a veto over their sex-related health care decisions, creating, in effect, a parental notice and consent requirement that violates the First, Fourth, Ninth, and Fourteenth Amendments of the Constitution.

For relief against the state and city defendants, plaintiffs seek a declaratory judgment that defendants' administration of their family planning services program violates the Act and the Constitution and a mandatory injunction requiring defendants to provide each eligible individual with her own Medicaid identification card and an individual copy of written information concerning family planning services.

Plaintiffs also contend that the federal defendant has failed to compel New York to administer its programs in compliance with federal law. They seek a mandatory injunction and a declaratory judgment that would require the federal defendant to change her interpretation of the Act, to demand New York's compliance with that Act, and to reduce New York's federal AFDC funds by one per cent unless it complies with the Act and the relevant regulations.

---

1. The Secretary of Health and Human Services moved to dismiss the complaint for lack of subject matter jurisdiction on the grounds that there was no jurisdiction under 28 U.S.C. § 1331 (1982), 28 U.S.C. § 1361 (1982), the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* (1983), or the Social Security Act. Because the District Court granted the state and city defendants' motions to dismiss the complaint and the claims against the federal defendant were derivative in nature, the District Court also dismissed the complaint as to the federal defendant without considering the alleged jurisdictional defects.

Since we affirm the ruling on the insufficiency of the primary claim, we also see no need to consider the jurisdictional basis of the derivative claim.

2. Plaintiffs proposed to represent a class of similarly situated individuals who have not received a Medicaid identification card and an offer of family planning and abortion services. The District Court granted defendants' motion to dismiss without determining whether to certify the class.

## II

We turn first to the state and city defendants' challenge to plaintiffs' standing to assert the claims raised. The District Court adverted to "a very serious question as to the standing of the plaintiffs," but proceeded to the merits of the claims because "to the extent that the complaint sets forth that the plaintiffs receive no notice of the availability of family planning services," the lack of notice "itself [is] an allegation of injury" that gives them standing. Defendants challenge plaintiffs' standing on the grounds that no plaintiff alleges that she applied for, and was denied, family planning services.

■ In testing plaintiffs' standing, we must consider (1) whether they allege that they have suffered an "injury in fact" and (2) "whether the interest sought to be protected by the complainant[s] is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152–53, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970); *see Barlow v. Collins*, 397 U.S. 159, 164–65, 90 S.Ct. 832, 836–37, 25 L.Ed.2d 192 (1970). While injury in fact is essential to an Article III case or controversy, *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975), the zone of interest requirement reflects prudential considerations. *Valley Force Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1962).[3] We have no doubt that the interests plaintiffs seek to protect are within the "zone of interests" intended to be furthered by the statutory scheme. Plaintiffs allege that they are sexually active eligible recipients who desire access to family planning services. The relevant statutory provisions were enacted to re-duce the incidence of unwanted pregnancy and venereal disease among indigent sexually active teenagers and adults. *See, e.g.,* H.R.Rep. No. 544, 90th Cong., 1st Sess. 4 (1967), *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2835.

■ The doubtful aspect of plaintiffs' standing is whether they have established injury in fact as to both the alleged failure to offer family planning services and the alleged failure to provide such services. Plaintiffs must show a distinct and palpable injury to themselves. *Warth v. Seldin, supra*, 422 U.S. at 499, 95 S.Ct. at 2205; *Roe v. Wade*, 410 U.S. 113, 128, 93 S.Ct. 705, 714, 35 L.Ed.2d 147 (1973); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Plaintiffs have alleged a sufficient injury with respect to their claim that New York fails to notify them of the availability of family planning services, a failure they contend violates the statutory requirement of an "offer" and denies them equal protection. The lack of notice is the injury, as the District Court recognized, and plaintiffs have standing to complain of that injury whether or not they have been denied services.

■ Plaintiffs lack standing, however, for their remaining claims. None of the plaintiffs alleges that she requested and was denied family planning services for want of a Medicaid identification card. Consequently, none has standing to assert either the statutory claim that New York fails adequately to provide those services or the constitutional claim that lack of an individual Medicaid identification card permits the head of a household to preclude household members from obtaining such services and thereby to intrude upon their sex-related health care decisions. *Cf. Warth v. Seldin, supra* (potential residents of community lack standing to challenge

---

**3.** Recent Supreme Court decisions that do not advert to the "zone of interest" test, *see, e.g., INS v. Chadha*, —— U.S. ——, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), have prompted doubts about the continued vitality of the zone of interest requirement. *See, e.g., B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 719 (2d Cir.1983); 4 K.C. Davis, *Administrative Law Treatise* § 24:17 (1983).

alleged exclusionary zoning practices). Even after an opportunity to amend their complaint, *see id.* 422 U.S. at 501, 95 S.Ct. at 2206, none of the plaintiffs alleged any attempt to obtain services without a Medicaid identification card or the denial of those services.[4]

### III

We turn now to the merits of plaintiffs' claim that the state practice of sending family planning services information only to the head of a household, rather than to all sexually active members of that household, violates various provisions of the Act. This claim raises two distinct issues— whether the Act imposes *any* notification requirement and, if so, whether, plaintiffs' allegations state a claim of non-compliance with such a requirement. We agree with the District Court that any requirement to provide individualized notification exists, if at all, only by virtue of section 402(a)(15)(A) of the Act,[5] which provides in part that state plans[6] for the administration of AFDC must provide:

> for the development of a program, for each appropriate relative and dependent child receiving aid under the plan and for each appropriate individual (living in the same home as a relative and child receiv-

ing such aid) ... for preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life, and for implementing such program by assuring that in all appropriate cases (including minors who can be considered to be sexually active) *family planning services are offered to them and are provided promptly* (directly or under arrangements with others) to all individuals voluntarily requesting such services but acceptance of family planning services provided under the plan shall be voluntary on the part of such members and individuals and shall not be a prerequisite to eligibility for or the receipt of any other service under the plan.

42 U.S.C. § 602(a)(15)(A) (Supp. V 1981) (emphasis added).

Plaintiffs contend that the plain meaning of that provision imposes an affirmative obligation on participating states to notify all eligible individuals of the availability of family planning services. The crux of their argument is that the statute contemplates two distinct affirmative acts—the "offer" and the "prompt provision" of services. Conceding that the plain meaning of the words "offer" and "provide" in this context is "to make available," an obligation that could be met without giving notice of the

---

**4.** The class action allegation adds nothing to the standing inquiry since the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin, supra,* 422 U.S. at 502, 95 S.Ct. at 2207; *see O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

**5.** The parallel provision for state Medicaid plans, enacted in 1972, Pub.L. No. 92–603, § 299E, 86 Stat. 1329, 1462, simply defines "medical assistance" in 42 U.S.C. § 1396a(a) (Supp. V 1981) to include "family planning services and supplies furnished (directly or under arrangements with others) to individuals of child-bearing age (including minors who can be considered to be sexually active) who are eligible under the State plan and who desire such services and supplies." 42 U.S.C. § 1396d(a)(4)(C). Another provision, 42 U.S.C. § 1396b(a)(5), states that federal reimbursement for state Medicaid program expenditures shall include "an amount equal to 90 per cen-

tum of the sums expended during such quarter which are attributable to the offering, arranging, and furnishing (directly or on a contract basis) of family planning services and supplies."

**6.** Under both the AFDC and Medicaid provisions, participating states are required to submit plans for approval to the Secretary of Health and Human Services, 42 U.S.C. §§ 602 and 1396 (1976 & Supp. V 1981). These plans must conform to the requirements of the Social Security Act and the regulations promulgated thereunder. 42 U.S.C. §§ 602 and 1396a; *King v. Smith,* 392 U.S. 309, 317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). If a state fails to administer its program in "substantial compliance" with the Act, the Secretary may withhold payments under the program. 42 U.S.C. §§ 604(a) and 1396c. If a state fails to offer and arrange for the provision of family planning services under its AFDC plan, the Secretary may reduce AFDC payments to the state by one per cent. 42 U.S.C. § 603(f).

availability of services, plaintiffs argue that "offer" must connote an act different from "provide," unless Congress is thought to have used redundant language. They also rely on the words of section 402(a)(15)(A) that contemplate that eligible recipients should be able to "voluntarily request[ ]" services after having been offered services. The request for services, they argue, implies that there need be no request for an "offer" of such services. Moreover, they contend, a "voluntary request" of services presupposes knowledge of the availability of such services. The state and city defendants contend that the statute does not impose any notification requirement.

In our view the wording of the statute is not conclusive. Though it is a familiar canon of construction that all words of a statute are to be given meaning, it is a reality that the drafters of statutes (no less than the drafters of opinions) sometimes use two words where one would suffice. "Offer" in section 402(a)(15)(A) does not necessarily mean something different from "provide." Moreover, as a textual matter, the terms "offered" and "provided promptly" could be given slightly distinct meanings, without any implication of a notice obligation, by reading them to mean that services must be available to all eligible persons and furnished promptly to those who request them. Even if "offered" connotes some degree of notice, the word surely does not convey meaning as to the extent of such notice. We therefore examine the legislative history for guidance as to what Congress intended.

We consider first the predecessor provisions. The original provision, added as an amendment to section 402(a) of the Act in 1967, provided, in relevant part, that each participating state had to provide:

(A) for the development of a program for each appropriate relative and dependent child receiving aid under the plan, and each appropriate individual (living in the same home as a relative and child receiving such aid) whose needs are taken in account in making the determination under clause (7), with the objective of—

.  .  .  .  .

(ii) preventing or reducing the incidence of births out of wedlock and otherwise strengthening family life,

(B) for the implementation of such programs by

(i) assuring that such relative, child, or individual who is referred to the Secretary of Labor pursuant to clause (19) is furnished child-care services and *that in all appropriate cases family planning services are offered to them....*

Pub.L. No. 90–248, § 201(a)(1)(C), 81 Stat. 821, 878 (1967) (emphasis added). Were we construing that provision, the plain meaning would provide scant support for a notification requirement. Moreover, there is no reference in the legislative history to any obligation to inform. *See* S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2837, 2869, 2983, 3033, 3116; H.R.Rep. No. 544, 90th Cong., 1st Sess. 4, 16, 97–98, 171–72 (1967).[7]

In 1971, section 402(a)(15)(A) was further amended by adding the clause: "but acceptance of family planning services under the plan shall be voluntary on the part of such members and individuals and shall not be a prerequisite to eligibility for or the receipt of any other services under the

---

7. Plaintiffs rely on the floor remarks of then Congressman Bush, a member of the Committee on Ways and Means, which reported the bill. After noting the proposed "requirement that all states offer family planning services to mothers receiving assistance payments," Congressman Bush alluded to testimony before the Committee "that twice as many mothers availed themselves of family planning services when the services were directly offered them instead of merely

provided on request." 113 Cong.Rec. 23085 (1967) (statement of Rep. Bush). Arguably that statement contemplates an outreach-informational program, though of an undefined magnitude. We are reluctant, however, to infer from that lone comment an affirmative obligation to notify individually each potential beneficiary of a public benefit, an interpretation that could as easily be advanced for many similarly worded public benefits statutes.

plan." Pub.L. No. 92–223, § 3(a)(1), 85 Stat. 802, 803 (1971). That addition lends no weight to plaintiffs' construction, and the accompanying committee reports do not even mention this amendment. *See* H.R. Rep. No. 590, 92d Cong., 1st Sess. (1971); S.Rep. No. 552, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.Code Cong. & Ad. News 2435.[8]

The 1972 Amendments to the Social Security Act included several changes concerning the coverage and provision of family planning services and added a penalty for non-compliance by the states in providing such services. Pub.L. No. 92–603, § 299E, 86 Stat. 1329, 1462–63 (1972). The amendments to section 402(a)(15)(A) itself add little, if any, support to plaintiffs' construction. One change inserted after the words "offered to them" the clause "and are provided promptly (directly or under arrangements with others) to all individuals voluntarily requesting such services." This addition of a "prompt provision" requirement suggests only that Congress was concerned with the delay in the delivery of services; it affords no basis for thinking that the preexisting requirement to "offer" services includes an obligation of notification. The second change inserted

after the words "in all appropriate cases" the parenthetical "(including minors who can be considered sexually active)." This addition expands the class eligible for services; it says nothing about notice of the availability of services.[9]

The non-compliance penalty provision and its legislative history give some support to plaintiffs' construction. The Senate proposed an amendment to the House bill to reduce by two per cent the amounts payable to a state "if such state, in the immediately preceding fiscal year, failed to carry out fully the provisions of section [402(a)] requiring the offering and provision of family planning services and supplies." S.Rep. No. 1230, 92d Cong., 2d Sess. 834 (1972). The House accepted that amendment but lowered the penalty to one per cent. Conf.Rep. No. 1605, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5399. The provision as enacted states, in part, that the amounts payable to states shall be reduced by one per cent if such state "in the immediately preceding fiscal year failed to carry out the provisions of section 402(a)(15)(B)[10] of this title as pertain to requiring the offering and arrangement of provision of family planning services." Pub.L. No. 92–603,

8. This 1971 amendment actually undermines plaintiffs' argument that Congress intended that first a potential recipient would receive a mandatory individualized offer of family planning services, and then, at some subsequent time, the informed recipient could voluntarily request the services. In adding this clause, Congress was simply making more explicit the *previously* expressed intent that AFDC recipients not be compelled by the state to use the services as a condition to the receipt of other AFDC benefits. *See* H.R.Rep. No. 544, 90th Cong., 1st Sess. 98 (1967). The Senate Finance Committee Report states that the Committee added language to the House version of the 1967 bill "to clarify that the acceptance of family planning services would be voluntary and not a requisite for the receipt of assistance." S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2869–70. This language, however, was not included in the bill as enacted, Pub.L. No. 90–248, § 201, 81 Stat. 821, 878 (1967).

9. The House, Senate, and Conference Committee Reports shed little light on the significance of these two additions. The "sexually active minors" parenthetical is not expressly referred

to in any of those reports. In the section of the Senate Report pertaining to new provisions added by the Finance Committee, that Committee states "The Secretary would be required to work with the States to assure that particular effort is made in the provision of family planning services to minors (and non-minors) who have never had children but who can be considered to be sexually active; for example, persons who have contracted venereal diseases, etc." S.Rep. No. 1230, 92d Cong., 2d Sess. 297 (1972). However, the revisions of the House bill proposed by the Senate Committee did not include the "sexually active" parenthetical. *See id.* at 818.

The "provided promptly" clause originated in a Senate amendment to the House version of the bill, *see* S.Rep. No. 1230, 92d Cong., 2d Sess. 818 (1972), and there is no reference to the clause in either the Senate or Conference Committee Reports.

10. Since the cross-reference is to "provisions ... requiring the offering ... of family planning services," the cross-referenced section number should have been 402(a)(15)(A).

§ 299E, 86 Stat. 1329, 1463 (1972) (codified at 42 U.S.C. § 603(f)(1) (1976)).

Though the wording of this penalty provision does not illuminate the meaning of "offer," the legislative history provides some support for an obligation of undefined magnitude to inform AFDC recipients of the availability of family planning services. The Senate Report states that the Senate-proposed penalty provision would "reduce the federal share of AFDC funds by 2 percent ... if a State in the prior year fails *to inform the adults in the AFDC families* and on workfare *of the availability of family planning services* and/or if the State fails to actually provide or arrange for such services for persons desiring to receive them." S.Rep. No. 1230, 92d Cong., 2d Sess. 67 (1972) (emphasis added). The Report also states:

> In order to assure that States do in fact inform welfare recipients and other eligible persons of the availability of family planning services, and that those who so desire receive the necessary medical and counseling services, the amendment would reduce the Federal share of AFDC funds by 2 percent, beginning with calendar year 1974, if a State in the prior year fails to inform at least 95 percent of the adults in AFDC families and on workfare of the availability of family planning services and/or if the State fails to actually provide or arrange for such services for 100 percent of those persons desiring to receive them.

Because of the difficulties of enforcing or monitoring the mandatory provision of family planning services to former or potential recipients, the penalty provision will be limited to the offering and provision of services to present adult recipients of AFDC and workfare. However, family planning services must be offered

and made available on an optional basis to former and potential recipients of child-bearing age.

It is envisioned that individuals of child-bearing age applying for or receiving AFDC would formally acknowledge that they have been informed that they are eligible to receive family planning services on a voluntary and confidential basis. If they desire family planning services, an appointment would be set up at that time and a copy of the form would be sent to the clinic or physician providing necessary services and supplies. This would not preclude "walk-in" requests for family planning assistance by present and former recipients or those likely to become recipients in the absence of such services.

The effectiveness of the program would be monitored by Federal officials on a sample basis. The operation of the program would also be subject to review by the Inspector-General for Health Care Administration.

*Id.* at 297.

This Report and the Conference Committee Report [11] appear to envision some informational obligation, at least as to adult AFDC recipients. But even if the 92d Congress thought that the obligation to "offer" services, as enacted by the 90th Congress, included some notification requirement,[12] arguably the legislators envisioned no more than a system whereby welfare office personnel would inform eligible recipients of the availability of services during the course of an application interview. The Senate Report states that a penalty will be imposed if the state "fails to inform at least 95 percent of the adults in AFDC families." S.Rep. No. 1230, 92d Cong., 2d Sess. 297. This language suggests that

---

**11.** The Conference Committee Report characterizes the Senate-proposed penalty provision as applying to a state's failure to "inform AFDC adults of the availability of family planning counseling and related medical care." Conf. Rep. No. 1605, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5399. Both the Senate and Conference Committee Reports contemplate notification only of adults.

**12.** Judge Wald has observed that "follow-up congressional intent may become relevant if expressed in a positive legislative act." Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term,* 68 Iowa L.R. 195, 205 (1983).

any informational obligation extends only to AFDC applicants, rather than to all the household members for whom benefits may be available. Moreover, in light of the inherent enforcement problems, it is unlikely that Congress contemplated a public relations campaign of the magnitude plaintiffs request. Not only would a state have difficulty locating all minors who could be considered sexually active, but the Secretary would have difficulty policing the 95 per cent compliance rate referred to in that Report.

Although this dispute between plaintiffs and the state and local defendants is the type in which the Secretary's interpretation of the statute would be entitled to significant deference, *see Greater New York Hospital Association v. Blum,* 634 F.2d 668, 673 (2d Cir.1980), we are not sure what that interpretation is. In pleadings and briefs the Secretary has argued only that the District Court lacks subject matter jurisdiction over the claims asserted against her, though at oral argument before this Court counsel for the Secretary expressed the view that the statute does not impose any notification requirement. The previously published regulations on required services in state AFDC plans, 45 C.F.R. Part 1392, Subpart A (1982), which were "removed" by the Secretary on May 20, 1983, 48 Fed. Reg. 23119 (May 23, 1983), provide no guidance. Those regulations simply defined family planning services, mandated the availability of such services without regard to marital status, age or parenthood, and required that recipients were assured the choice of method and source of service. 45 C.F.R. § 1392.21.

The regulation implementing the family planning services penalty provision, 45 C.F.R. § 205.146(b) (1982), is also unilluminating, except for the advice that the penalty will be applied in accordance with instructions to be issued by the Social and Rehabilitation Service.[13] A "Program Instruction," AO–PI–74–1, was issued on February 20, 1974, and sent to state agencies administering the AFDC plan. This Instruction contemplates, with some specificity, that states must inform recipients of the availability of family planning services:

> 2. *Offer*—An offer of family planning services occurs when a person is informed of the availability of these services and the means for obtaining them. The offer must be made to current recipients in writing. The requirement of a written offer may be met by a flyer, one to a family, with the assistance check. A record must be maintained of the offer. The offer must be made within 31 days of the first assistance payment or by April 1, 1974, whichever is later, and once a year thereafter.

It then prescribes requirements for state documentation of compliance and states that the penalty will be applied when "less than 95% of the appropriate families were informed about family planning services and received family planning services as required." This Instruction supports plaintiffs' contention that the word "offer" includes an obligation to inform, though it does not support the extent of notice that plaintiffs seek. However, it is doubtful that such instructions are entitled to the same deference accorded to regulations published in the Code of Federal Regulations.[14]

Having reviewed the available materials, we think it likely that Congress expected the states to comply with their obligation to "offer" family planning services by taking some initiative to make known the availability of such services. But in the

---

**13.** Although the Social and Rehabilitation Service has been abolished and its functions transferred, the "Program Instruction" was not rescinded.

**14.** Other courts have considered and applied similar interpretive guidelines governing the analogous penalty provision for failure to inform AFDC families and provide or arrange for the provision of child health screening services under state Medicaid plans. 42 U.S.C. § 603(g) (repealed by Pub.L. No. 97–35, 95 Stat. 815 (1981)). *See Stanton v. Bond,* 504 F.2d 1246 (7th Cir.1974), *cert. denied,* 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975); *Wisconsin Welfare Rights Organization v. Newgent,* 433 F.Supp. 204 (E.D.Wis.1977); *Woodruff v. Lavine,* 417 F.Supp. 824 (S.D.N.Y.1976).

absence of any clear indication of Congressional intent or authoritative administrative interpretation we are unable to attribute to Congress any precise requirement as to how extensively information must be disseminated or the means for doing so. Whatever the requirement, we have no doubt that New York is in compliance by sending an information circular to each AFDC household. The few clues in the legislative history and administrative background support nothing further. The Senate and Conference Committee Reports suggest that the Congress envisioned that only adults would be informed, and the administrative Program Instruction advises that a state need send only one flyer to each AFDC household. Accordingly, plaintiffs' claim that the Act entitles them to individualized notification of the availability of family planning services is without merit and was properly dismissed for failure to state a claim upon which relief can be granted.

Plaintiffs' constitutional arguments focus essentially upon the alleged barriers to receipt of services, a claim for which we have ruled they lack standing. To whatever extent they are pursuing a constitutional claim of unequal treatment in the notification of the availability of services, the claim is without merit. Governmental action that distinguishes between adult heads of households and teenage members of households for purposes of determining the addressee of family planning services information sent by mail encounters no significant equal protection objection.[15]

The judgment of the District Court is affirmed.

---

**15.** Plaintiffs made no claim that state or local officials refused to discuss available family planning services with any of them or denied any request for information to be conveyed by mail or by telephone.