**John W. MADSEN, Plaintiff–Appellant,**

v.

**BOISE STATE UNIVERSITY, Defendant–Appellee.**

No. 91–35335.

United States Court of Appeals, Ninth Circuit.

Submitted June 4, 1992 *.

Decided Sept. 22, 1992.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

John Madsen, Boise, Idaho, pro se.

Donald W. Lojek, Lojek & Gabbert, Boise, Idaho, for defendant-appellee.

Before FARRIS, NORRIS and KOZINSKI, Circuit Judges.

PER CURIAM.

John Madsen sues Boise State University under 42 U.S.C. § 1983, claiming handicap discrimination based on the fact that the University did not offer free handicap parking permits on campus. Madsen claims this is discrimination because all handicap parking spots on campus require a permit (and therefore a fee), whereas there is some non-handicap parking available that students may use free of charge.

Madsen made several calls to the Parking Services Office, Student Special Services, and the Vice President's Office to inquire about the availability of free handi-

cap permits and was told none were available. He did not actually apply for a permit; he did not seek a waiver of the $15 permit fee; he did not pay the $15 and seek a refund. OCR Letter at 3, Finding of Fact 12 (July 2, 1990).[1] Instead, he filed a complaint with the U.S. Department of Education, Office of Civil Rights, alleging that the University had discriminated against him on the basis of handicap by charging $15 for a handicap parking permit. OCR investigated the complaint, and found that the University parking policies did not comply with section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. The University voluntarily took remedial measures. OCR Letter at 4. Because Madsen himself had never actually applied for a free permit, however, "OCR [was] unable to conclude that the University discriminated against [Madsen], based on handicap, with respect to the handicap parking fee." *Id.*

Madsen then brought this suit seeking damages based on the fact that he had been denied a free handicap parking permit. The district court dismissed the action for failure to state a claim.

Like the OCR before us, we are confronted with the fact that Madsen never actually applied for a handicap parking permit. His lawsuit is based on the University's policy in the abstract. There is a long line of cases, however, that hold that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit. *See, e.g., Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166–71, 92 S.Ct. 1965, 1968–70, 32 L.Ed.2d 627 (1972) (plaintiff who had never applied for membership lacked standing to challenge fraternal organization's discriminatory membership policies); *Lehon v. City of Atlanta,* 242 U.S. 53, 56, 37 S.Ct. 70, 72, 61 L.Ed. 145 (1916) (non-resident who never applied for permit lacked standing to challenge licensing ordinance on ground that city officials discriminate in favor of residents in awarding licenses); *Albuquerque*

---

1. Before suing the University, Madsen filed a complaint with the Department of Education, Office for Civil Rights. The OCR issued Madsen a letter of findings and conclusions. Madsen incorporated this letter into his complaint, and we treat it as part of the record.

*Indian Rights v. Lujan,* 930 F.2d 49, 56 (D.C.Cir.1991) (plaintiffs lacked standing to challenge failure to extend Indian hiring preferences into job categories for which they never formally applied); *Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.,* 905 F.2d 1176, 1177 (8th Cir.1990) (employee who has not filed benefits claim lacks standing to challenge employer's retirement policy); *Doe v. Blum,* 729 F.2d 186, 189–90 (2d Cir.1984) (plaintiffs who never requested family planning services may not challenge Medicaid distribution procedures); *Brown v. Sibley,* 650 F.2d 760, 770–71 (5th Cir. Unit A Sept.1981) (plaintiffs who had never participated in or been excluded from program receiving federal funding lacked standing to challenge its compliance with Rehabilitation Act); *Jackson v. Dukakis,* 526 F.2d 64, 65–66 (1st Cir.1975) (plaintiff who did not apply for employment with state agencies lacks standing to allege discriminatory hiring practices); *Interstate Commerce Comm'n v. Appleyard,* 513 F.2d 575, 577 (4th Cir.) (trucker who has never applied for ICC transportation permit has "suffered no legally cognizable injury" from policy), *cert. denied,* 423 U.S. 840, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975).

Requiring a party to have actually confronted the policy he now challenges in court has several prudential and practical advantages. To begin with, it establishes the existence of a well-defined controversy between the parties. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (agency action unfit for "judicial interference until an administrative decision has been formalized and its effects felt in a *concrete* way by the challenging parties") (emphasis added). This case illustrates how the failure to make a concrete request can leave the dispute between the parties too nebulous for judicial resolution, because the precise nature of Madsen's asserted injury—and the appropriate relief—are unclear to us.

Madsen comes before us arguing that he suffered discrimination on the basis of handicap because he was denied a no-fee handicap parking permit. However, he does not allege that anyone else was given a no-fee parking permit. Therefore the University's failure to issue Madsen a free handicap permit cannot, by itself, be discriminatory. Madsen's real contention is that there are some parking spaces not covered by permits where non-handicapped individuals can park for free, while there are no such handicap parking spaces on campus. *See* OCR Letter at 2, Finding of Fact 3. Madsen's discrimination claim, then, is based not on the University's failure to give him a free permit, but on its failure to release some (although not necessarily all) handicap parking spaces from the requirement of a paid handicap permit. Indeed, in response to Madsen's OCR complaint, the University installed nine additional handicap spaces, three of which were "designated as available free of charge to handicapped persons ... who do not wish to pay the fee for a general handicap parking permit." OCR Letter, Memorandum of Agreement, at 1. Because Madsen never made a formal request for relief from the University, we are left somewhat at sea about whether the real dispute now before us concerns a claim that he was entitled to a free permit to park in any handicap space on campus or that there should have been some handicap spaces accessible with a special, no-fee permit. *See Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962) (one objective of standing is to "sharpen[ ] the presentation of issues upon which the court so largely depends for illumination of difficult ... questions").

Requiring a formal application as a condition for bringing a lawsuit also serves the salutary objective of ensuring that only those individuals who cannot resolve their disputes without judicial intervention wind up in court. When, as here, the defendant is an institution, a formal application, complaint or petition for relief assures that those in charge are aware of the problem and have a fair opportunity to resolve it. *See* 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3532.1, at 114 (1984) ("refusal to decide may itself be a healthy spur to inventive private or public

planning that alters the course of possible conduct so as to achieve the desired ends in less troubling or more desirable fashion"). The OCR found that the University had in place formal channels for handling complaints regarding parking. *See* OCR Letter at 3, Finding of Fact 16. An application for a parking permit, unaccompanied by the normal application fee, but containing a request for a waiver and an explanation for the basis therefor, would have required the University authorities to take formal action—to grant or deny the free permit—or to take some other remedial steps. The University was willing enough to adjust its policies once the OCR determined that those policies were in conflict with the Rehabilitation Act. We cannot presume that they would have been unwilling to waive or change existing policies if faced with a concrete request backed by a sound argument.

Finally, requiring a formal application as the normal prerequisite for bringing a case to court limits those who can claim injury from a policy that may not have harmed them at all, or that they may not have even known about. An application creates a record that the individual in question was, indeed, affected by the challenged policy. Admittedly, this is not a particularly strong consideration in this case, because Madsen does appear to have expressed a genuine interest in the policy in question, and apparently was responsible for the University's decision altering it. But the facts are seldom as clear and undisputed as these. The formal application requirement—as our caselaw establishes—presents a bright line separating those who have suffered from the challenged policy and those who have not.

The only remaining question is whether Madsen's case falls within that small class of cases where a formal application is unnecessary on the ground of futility. To begin with, it is unclear whether futility can, by itself, establish standing where it does not otherwise exist. It may well be that futility excuses some aspects of proving injury-in-fact while standing, a constitutional requirement, may not be so easily finessed. *Cf. Lujan v. Defenders of Wild-*

*life,* —— U.S. ——, ——–——, 112 S.Ct. 2130, 2144–45, 119 L.Ed.2d 351 (1992) (Article III "case and controversy" requirement limits the types of "injuries" Congress may create by statute). We need not resolve this issue because Madsen fails to allege sufficient facts supporting his futility claim. OCR's finding—incorporated by Madsen into his complaint—is that "[t]he position of University officials knowledgeable about campus parking is that parking permit fees may not be waived *based solely on an individual's inability to afford the fee.*" OCR Letter at 2, Finding of Fact 8 (emphasis added). But Madsen's claim is not that he was entitled to free parking because he was poor, but because he was handicapped. OCR's findings—and Madsen's allegations—say nothing about the futility of applying for a waiver of the fee based on his handicap. Nor are there findings or allegations that the University had an impenetrable policy—akin to a "Whites Only" sign—which would have rendered it impervious to any efforts to educate it as to defects in its policies. Madsen does not allege similar, futile efforts by others to seek free handicap parking, or anything else that suggests the University administration would have rebuffed his argument out of hand.

It is significant, moreover, that Madsen could have applied for a free permit or other relief and have obtained free parking while he was awaiting a ruling on his request. As the OCR noted, "[a] 30–day temporary handicap parking permit [was] available [to Madsen] at no cost." OCR Letter at 2, Finding of Fact 7. Madsen thus cannot argue that he was harmed by the long delay inherent in seeking a waiver. Had he followed the procedure outlined by the OCR, he could have applied for a waiver and yet been entitled to park for free while waiting for the University to act on his request.

Because we conclude that Madsen lacks standing to maintain this suit we do not express any opinion on the alternate grounds for dismissal offered by the district court.

AFFIRMED.

WILLIAM A. NORRIS, Circuit Judge, dissenting.

In reviewing this dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6), we are required to accept the allegations in Madsen's complaint as true. *Klarfeld v. United States,* 944 F.2d 583, 585 (9th Cir. 1991). Moreover, because Madsen is pro se, his complaint is held to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1971) (per curiam). Madsen's complaint alleges a violation of his civil rights and incorporates a letter from the Department of Education's Office of Civil Rights ("OCR"). The OCR letter contains findings of fact, which we must treat as supplementing Madsen's factual allegations.

Thus, Madsen alleges that he is physically disabled, which affects his ability to walk more than 50 to 100 feet; that, for professional reasons, he obtained an instructor's permission to audit a calculus course; that he needed to park in the disabled parking areas on campus in order to attend the course and to use the library; that some free parking was available to those without disabilities but that the university required a $15 fee for all disabled parking spots; that he telephoned the Parking Services Office, Student Special Services, and the Vice President's office stating that he could not afford the $15 fee, and was told he would have to pay the fee with his initial application if he wished to appeal; that he did not formally apply for a disabled parking permit; that the University's policy is that the fee for a parking permit may not be waived because of an individual's inability to pay; and that, as a result of his inability to attend the calculus course, he lost 9 months in working on a project.

The OCR specifically found that the University was in violation of § 504 of the Rehabilitation Act of 1973 "based on the University's failure to provide the option of free parking to handicapped persons comparable to the free parking available to nonhandicapped persons." Letter from Gary D. Jackson, Regional Civil Rights Director, Region X, to John Madsen (July 2, 1990) ("OCR Findings") at 4, *reprinted in* Appellee's Reply Brief Appendix A.

I

The majority's holding that Madsen lacks standing is based solely on the fact that he did not formally apply for a disabled parking permit. The majority leaps from this single omission to the bizarre conclusion that "[Madsen's] lawsuit is based on the University's policy in the abstract" rather than on the concrete personal injury he alleges. Maj. op. at 1220. Neither the facts of this case nor the case law on standing justify that conclusion.

The majority correctly discerns that the requirement of standing "presents a bright line separating those who have suffered from the challenged policy and those who have not." *Id.* at 1222. On the basis of the pleadings, we must conclude that Madsen is among "those who have suffered" from the University's parking policy. Madsen obtained the instructor's permission to audit a class, yet the University's parking policy combined with his physical disability and poverty to prevent him from attending. Faced with this obstacle, Madsen appealed to three University offices, including the one responsible for handling complaints about parking. The majority ignores both the injury Madsen actually sustained and the steps he took to avert it because of the one step he did not take—filing a formal application, with or without the $15 fee that the University officials insisted must accompany it. Willfully blind to the facts of this case, the majority redraws standing's "bright line" so that it excludes, not only those who suffered no injury, but others who made no formal application because published policy and informal inquiry indicated to do so would be futile.

When the majority announces that Madsen's allegations "say nothing about the futility of applying for a waiver of the fee based on ... handicap," maj. op. at 1222, its narrow reading of the pleadings does violence to the standard for reviewing 12(b)(6) motions. It is settled law in this circuit that "[a] complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (quoted in *Hall v. City of Santa Barbara*, 833 F.2d 1270, 1276 (9th Cir.1986)). Civil rights complaints in particular are to be liberally construed. *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir.1992) (citing *Gobel v. Maricopa County*, 867 F.2d 1201, 1203 (9th Cir.1989)). Madsen alleges that the University had no specific procedure for appealing its fee for handicapped parking, and that when he appealed in three telephone calls, he was told he would have to pay the fee if he wanted to apply for a permit. OCR Findings 13. Certainly these allegations suggest a set of facts that would entitle Madsen to relief! To hold otherwise is to ignore that "[l]aw reaches past formalism." *Lee v. Weisman*, —— U.S. ——, at ——, 112 S.Ct. 2649, at 2659, 120 L.Ed.2d 467 (1992).

None of the cases cited by the majority conditions standing on a formal application for the denied benefit. In the first of the list of cases, the Supreme Court held that a black plaintiff who "never sought to become a member" of a fraternal organization lacked standing to challenge its discriminatory membership policies. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167, 92 S.Ct. 1965, 1968–69, 32 L.Ed.2d 627 (1972). But as Judge Posner has astutely observed: "At least so far as one can tell from the opinions in the case, there was no evidence that Mr. Irvis *wanted* to be a Moose; not everyone does." *Planned Parenthood Ass'n of Chicago v. Kempiners*, 700 F.2d 1115, 1136 (7th Cir.1983) (Posner, J., concurring) (emphasis in original). In this case, there can be no similar doubt that Madsen wanted, and made clear to the University that he wanted, free disabled parking.

In two of the other cases the majority cites, plaintiffs challenging government hiring policies were found to lack standing because they had not "applied for *or otherwise sought to fill*" the positions at issue. *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 55 (D.C.Cir.1991) (emphasis added); *accord Jackson v. Dukakis*, 526 F.2d 64, 65–66 (1st Cir.1975). The plaintiffs in *Albuquerque Indian Rights* challenged the absence of an affirmative action preference for Native Americans. Because they took no steps to pursue the jobs in question, the court could not determine whether the plaintiffs had been injured by this omission, as the government might have hired them on the strength of their other qualifications. 930 F.2d at 55. These facts are in marked contrast to those the Supreme Court hypothesized in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), where standing would be appropriate: "If an employer should announce his policy of discriminating by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs." *Id.* at 365, 97 S.Ct. at 1869–70. In Madsen's case, the University's parking policy was equally categorical: No handicapped parking was available without a permit, and no application for a permit was accepted without the $15 fee. OCR Findings 3, 13. Madsen did not have to ignore that policy and personally subject himself to rebuff in order to have standing to bring this suit.

Of the five other cases the majority cites for its proposition that standing requires a plaintiff to formally apply for a benefit, three do not address standing, and the other two involve plaintiffs who never attempted in any way to avail themselves of the benefits allegedly withheld. *See Lehon v. City of Atlanta*, 242 U.S. 53, 55, 37 S.Ct. 70, 71, 61 L.Ed. 145 (1916) (as-applied challenge to an ordinance is decided "upon the merits"); *Oil, Chemical & Atomic Workers Int'l Union v. Gillette Co.*, 905 F.2d 1176, 1177 (8th Cir.1990) (case lacks ripeness where plaintiff has not been denied retirement benefits); *Doe v. Blum*, 729 F.2d 186, 189–90 (2d Cir.1984) (no standing where plaintiffs never even requested family planning services); *Brown v. Sibley*, 650 F.2d 760, 769 (5th Cir.1981) (no standing because "no allegation that named plain-

tiffs had any connection with [the challenged] program"); *Interstate Commerce Comm'n v. Appleyard,* 513 F.2d 575, 577 (4th Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 72, 46 L.Ed.2d 60 (1975) (as-applied statutory challenge fails on the merits where trucker does not apply for the regulated benefit). In this case, where Madsen challenges a categorical policy he personally sought relief from, these cases do not serve as precedent. The district court erred in dismissing the case for lack of standing.

## II

Because the majority upholds the dismissal of Madsen's case on the basis of standing, it does not address the two alternative grounds relied upon by the district court in dismissing the action: (1) that the University is not a "person" within the meaning of § 1983, and (2) that § 504 of the Rehabilitation Act establishes a comprehensive remedial scheme that forecloses § 1983 suits.

### A

The University relies on *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), to argue that it is not a "person" within the meaning of § 1983. In *Will,* the Court held that "States or governmental entities that are considered 'arms of the state' for Eleventh Amendment purposes" are not persons within the meaning of § 1983. *Id.* at 70, 109 S.Ct. at 2311; *see also Thompson v. City of Los Angeles,* 885 F.2d 1439, 1443 (9th Cir.1989). Whether the University is an arm of the state turns on the balancing of five factors: (1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only in the name of the state, and (5) the corporate status of the entity. *Mitchell v. Los Angeles Community College Dist.,* 861 F.2d 198, 201 (9th Cir.1988), *cert. denied,* 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663

(1989). Given the factual nature of this inquiry, the district court should not have concluded that the University was not a "person" just by looking at the complaint, and it was error to dismiss the complaint on this basis.

### B

The University also contends that § 504's remedial scheme forecloses enforcement of the statute under 42 U.S.C. § 1983. This is a question of first impression in the Ninth Circuit. *See Smith v. Barton,* 914 F.2d 1330 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991) (noting but not deciding the question). "We do not lightly conclude the Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right. The burden is on the State to show by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 520–521, 110 S.Ct. 2510, 2523, 110 L.Ed.2d 455 (1990) (citations and internal quotations omitted). The Court in *Wilder* pointed out that it had only twice held statutory remedial schemes to be comprehensive enough to displace § 1983. *See Middlesex County Sewerage Authority v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (Federal Water Pollution Control Act); *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (Education of the Handicapped Act).

In this case, the University does not rely on any statutory language that suggests that Congress intended to preclude § 1983 actions. Rather, it relies upon an administrative regulation, which authorizes the Assistant Secretary of Education to require recipients of federal funds to take remedial action. 34 CFR § 104.6. However, this administrative regulation is not an expression of Congress' intent. Nor is the administrative scheme a comprehensive one like those at issue in *Middlesex* and *Smith.* In fact, it most nearly resembles the Medicaid Act, which authorizes the Secretary to curtail federal funds to states whose plans are

not in compliance with the Act and which the Court has held not to bar § 1983 suits. *Wilder*, 496 U.S. at 520, 110 S.Ct. at 2523. I would hold, therefore, that § 504 of the Rehabilitation Act does not preclude § 1983 actions.

Accordingly, I would reverse the judgment dismissing the action under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.