**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JAMES M. FRIERY,
          *Plaintiff-Appellant,*

    v.

LOS ANGELES UNIFIED SCHOOL
DISTRICT; RUSS THOMPSON;
GENETHIA HUDLEY HAYES; VALERIE
FIELDS; VICTORIA M. CASTRO;
CAPRICE YOUNG; DAVID TOKOFSKY;
JULIE KORENSTEIN; MIKE LANSING;
RUBEN ZACARIAS, in their
individual and official capacities;
UNITED TEACHERS OF LOS ANGELES,
          *Defendants-Appellees,*

    and

OFFICE OF CIVIL RIGHTS; DOES 1
through 10, inclusive,
          *Defendants.*

No. 01-56016

D.C. No.
CV-00-06536-
NM/SH

ORDER

Appeal from the United States District Court
for the Central District of California
Nora M. Manella, District Judge, Presiding

Argued and Submitted June 5, 2002
Questions Certified to California Supreme Court
August 22, 2002
Certification Denied November 13, 2002
Supplemental Briefing Ordered August 13, 2003
Submission Deferred March 12, 2004
Supplemental Briefing Ordered October 28, 2005
Re-argued and Re-submitted April 6, 2006
Pasadena, California

Filed May 24, 2006

Before: Diarmuid F. O'Scannlain, Pamela Ann Rymer, and
Sidney R. Thomas, Circuit Judges.

---

## COUNSEL

Richard D. Ackerman, United States Justice Foundation,
Temecula, California, argued the cause and was on the brief
for appellant. Gary G. Kreep, United States Justice Founda-
tion, Escondido, California, was on the brief.

Peter W. James, Baker & Hostetler LLP, Los Angeles, Cali-
fornia, argued the cause and was on the brief for appellee Los
Angeles Unified School District. Lisa F. Hinchliffe and Greg-
ory L. Vinson, Baker & Hostetler LLP, Los Angeles, Califor-
nia, were on the brief.

Jesus E. Quinonez, Burbank, California, argued the cause for
appellee United Teachers of Los Angeles.

John D. Findley and Harold E. Johnson, Pacific Legal Foun-
dation, Sacramento, California, were on the brief for *amicus
curiae* Pacific Legal Foundation.

---

## ORDER

We have been asked to consider whether a school district's
race-conscious faculty transfer policy violates either the Cali-
fornia or federal constitutions.[1] Before we reach the merits of
the claim, we must first consider whether the plaintiff has
standing to bring suit. Because we conclude that the record is

---

[1]The Motion to File a Supplemental Brief Amicus Curiae of Pacific
Legal Foundation in Support of Appellant James M. Friery is granted.

insufficiently developed to determine whether there is Article III standing, we remand to the district court for the limited purpose of finding facts and making a determination of the plaintiff's standing.[2]

I

James Friery, the plaintiff-appellant, is a physical education instructor at Van Nuys High School who sought to transfer to Van Nuys Math / Science Magnet School ("the Magnet School"). The Magnet School is located on the same campus as Van Nuys High School, and both are part of the Los Angeles Unified School District ("LAUSD").

The LAUSD has adopted a Transfer Policy which bars intra-district faculty transfers that would move the destination school's ratio of white faculty to nonwhite faculty too far from LAUSD's overall ratio. Versions of the Transfer Policy have been in place for about 20 years, but LAUSD adopted the current Transfer Policy in 1997. As its name suggests, the Transfer Policy applies only to "assignments, displacements and transfers of teachers," not to hiring or firing decisions. Under the Transfer Policy, both ordinary secondary schools (like Van Nuys High) and magnet schools (like Van Nuys Magnet) may deviate up to 15 percentage points below or 25 percentage points above the overall percentage of minority faculty. Thus, because in 1999, 51 percent of LAUSD's K-12 and magnet school teachers were minorities, the faculty of the Magnet School could permissibly be as high as 76 percent

---

[2]At oral argument the possibility arose of abstention in light of currently pending state court litigation—in *American Civil Rights Foundation v. LAUSD*, Los Angeles Superior Court Case No. BC341341 (filed Oct. 12, 2005)—involving novel state law questions identical to those presented here. *See, e.g., R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941). Similarly, the parties questioned the propriety of supplemental jurisdiction under 28 U.S.C. § 1367(c), in light of the novel and complex state law issue presented. If either issue is pursued before the district court, we would consider these issues to be within the scope of the limited remand.

minority or as low as 36 percent minority. The Transfer Policy also provides that "the goals may be modified as a result of the qualifications of available applicants or to meet the instructional needs of students, the school's instructional program or other specific and demonstrable requirements of the school."

On or about June 17, 1999, Friery approached Russ Thompson, formerly the principal of Van Nuys High School, and inquired about the possibility of applying to transfer to a then-vacant position as the physical education teacher at the Magnet School. Thompson told Friery that he would not be eligible for the transfer because he was—in Thompson's words—of "the wrong ethnic origin." Friery did not file a formal application to transfer, in light of Thompson's representation. Friery's claims against the defendants are based solely on his challenge to the Transfer Policy.

As a result of Thompson's representation that he would not be eligible for the transfer, Friery filed suit in federal court, alleging violations of the Equal Protection Clause of the United States Constitution, U.S. Const. amend. XIV, § 1, and the Equal Protection Clause of the California Constitution, Cal. Const. art. I, § 31. Friery named as defendants Thompson; the LAUSD, its superintendent, and the members of its governing board; the union representing the district's teachers, with whom the district had negotiated the Transfer Policy; and a federal agency that was later dismissed from the action (collectively, "the defendants").

The district court, apparently assuming without deciding that Friery had established standing, granted summary judgment to the defendants, concluding that the Transfer Policy violated neither the California nor federal constitutions. Following submission after oral argument in June 2002, we certified various state law questions to the California Supreme Court. *See Friery v. L.A. Unified Sch. Dist.*, 300 F.3d 1120 (9th Cir. 2002). The California Supreme Court denied the

request for certification. *Friery v. L.A. Unified Sch. Dist.*, S109751 (filed Nov. 13, 2002). In August 2003, we invited the parties to file supplemental briefing discussing the impact of the Supreme Court's decisions in *Grutter v. Bollinger*, 539 U.S. 306 (2003), and *Gratz v. Bollinger*, 539 U.S. 244 (2003). We subsequently stayed proceedings pending *Parents Involved in Community Schools v. Seattle School District, No. 1*, 426 F.3d 1162, 1173 (9th Cir. 2005) (en banc). Those proceedings having concluded, the parties were invited to file supplemental briefing discussing *Parents Involved* in October 2005. Having received the supplemental briefing, we heard further oral argument and took this case under submission again.

## II

Friery challenges the constitutionality of the LAUSD's transfer policy. Despite the advanced stage of this litigation, the LAUSD questioned Friery's standing in its supplemental briefing. As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("Standing to sue is an aspect of the case-controversy requirement."); *see also* Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

It is a long-established rule "that a plaintiff lacks standing to challenge a rule or policy to which he has not submitted himself by actually applying for the desired benefit." *Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220-1221 (9th Cir. 1992) (per curiam) (citing, *inter alia*, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-71 (1972) (plaintiff who did not apply for membership in a fraternal organization lacked standing to challenge its discriminatory membership policies); and *Lehon v. City of Atlanta*, 242 U.S. 53, 56 (1916) (non-resident who did not apply for a permit lacked standing to challenge

allegedly discriminatory licensing ordinance)). In *Madsen*, the plaintiff sued the university alleging discrimination because the university did not offer free handicap parking permits. Madsen called the university parking office to inquire about free permits, but was told that none were available. *Id.* at 1220. Madsen did not apply for a permit, nor did he seek a fee waiver. *Id.* Instead, he immediately filed a complaint with the U.S. Department of Education, Office of Civil Rights. *Id.* We determined, therefore, that Madsen did not have standing to bring his claim. *Id.* at 1221-22.

We noted in *Madsen* that requiring that a party to "have actually confronted the policy" that he alleges to be discriminatory "has several prudential and practical advantages." *Id.* at 1221. As we explained in the later case of *United States v. Baugh*, "A central reason for this requirement is to ensure that the challenged policy actually affected the person challenging it." 187 F.3d 1037, 1042 (9th Cir. 1999).

On the facts before us in this appeal, we share the concerns expressed in *Madsen*. In particular, we are uncertain whether the Transfer Policy would have affected Friery. We know that Thompson suggested to Friery that any application would be futile, but we do not know what role Thompson played in hiring or firing decisions themselves. It appears that Thompson was principal of Van Nuys High School, but not the Magnet School, so it is unclear what his role would be, if any, in evaluating transfer applications. *If* Thompson's interpretation of the Transfer Policy is binding, then Friery's application would presumably be futile. However, if the situs of decision-making power is at the district level, or with some other official, then Thompson's statement might be wholly irrelevant.

Moreover, we note that the Transfer Policy itself may be "modified as a result of the qualifications of available applicants." We are uncertain who has the authority to "modif[y]" the program goals. It may well be that had Friery applied for a position at the Magnet School, the school might have

accepted his application on the basis of dire need, excellent qualifications, or any other reason. Again, despite Thompson's warning to the contrary, Friery does not appear wholly without a hope.

Friery claims that a formal transfer application would be futile, thereby negating that requirement. *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002) ("We have consistently held that standing does not require exercises in futility." (citing *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496, 499 (9th Cir. 1981)); *see also Desert Outdoor Adver., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996). But this assumes too much: *If* Thompson correctly interpreted the Transfer Policy, *if* Thompson had the authority to deny Friery the ability to transfer, and *if* any exceptions in the Transfer Policy did not apply to Friery, then Thompson's assurances to him might make Friery's application futile. However, these facts represent the quintessence of conjecture and speculation —realms where our jurisdiction to entertain suit may cease. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (noting that "the irreducible constitutional minimum of standing" includes "an injury in fact" that is "actual or imminent, not conjectural or hypothetical" as well as "a causal connection between the injury and the conduct complained of" (internal quotation marks and citations omitted)).

In short, we need more information before we can determine whether this case falls under *Taniguchi*—as Friery's asserts—rather than *Madsen*. Because we conclude that the record requires further factual development before we can be confident that we have jurisdiction to consider Friery's complaint, we cannot proceed further. We therefore order a limited remand to the district court with instructions to develop the factual record and to determine whether Friery has standing to bring suit. The district court may entertain any appropriate motions. We offer no view on whether abstention or dismissal of the action (or any individual claim) is appropriate

at this juncture, but should the district court decide that it is, it may enter an appropriate order.

This order rests entirely on Friery's standing (or possibly lack thereof), and we do not—indeed *may not*—express any opinion as to standing or the underlying merits of his complaint.

REMANDED to the district court for further proceedings consistent with this order. The district court is requested to respond with its findings and determinations at its earliest convenience.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.