UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; SAN FRANCISCO CRAB BOAT OWNERS ASSOCIATION, INC., <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF RECLAMATION, <br><br> Defendants - Appellees, <br><br> and <br><br> WESTLANDS WATER DISTRICT; et al., <br><br> Intervenor-Defendants - Appellees. | No.   14-15514 <br><br> D.C. No. 1:12-cv-01303-LJO-MJS Eastern District of California, Fresno <br><br><br> ORDER |

Before:  SILVERMAN, FISHER, and TALLMAN, Circuit Judges.

The memorandum disposition filed on March 28, 2016, is replaced with the concurrently filed amended memorandum disposition.

With these amendments, Judges Silverman and Tallman have voted to deny appellants' petition for rehearing en banc, and Judge Fisher so recommends.

The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc, Fed. R. App. P. 35.

The petition for rehearing en banc (Docket Entry No. 56) is **DENIED**. No further petitions for panel rehearing or rehearing en banc will be entertained.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 25 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PACIFIC COAST FEDERATION OF FISHERMEN'S ASSOCIATIONS; et al., | No. 14-15514 |
| Plaintiffs - Appellants, | D.C. No. 1:12-cv-01303-LJO-MJS |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR; et al., | AMENDED MEMORANDUM[*] |
| Defendants - Appellees, | |
| and | |
| WESTLANDS WATER DISTRICT; et al., | |
| Intervenor-Defendants - Appellees. | |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted February 9, 2016
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: SILVERMAN, FISHER, and TALLMAN, Circuit Judges.

Pacific Coast Federation of Fishermen's Associations, Inc., and San Francisco Crab Boat Owners Association, Inc. ("plaintiffs") appeal the district court's partial dismissal and partial summary judgment of their action under the National Environmental Policy Act ("NEPA") against the United States Department of the Interior and the United States Bureau of Reclamation. We have jurisdiction under 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

Prior to approving eight interim two-year contracts for the delivery of water from the Central Valley Project to California water districts, Reclamation issued an environmental assessment ("EA") and a finding of no significant impact ("FONSI"). Plaintiffs seek declaratory and injunctive relief on the basis of alleged violations of NEPA in (1) an inadequate EA and FONSI and (2) failure to prepare an environmental impact statement ("EIS") for the interim contracts. The district court dismissed plaintiffs' claims that an EIS was required and that the EA's "no action" alternative was deficient, and it granted summary judgment in favor of defendants on the remaining challenges to the EA.

Even though the two-year contracts expired on February 28, 2014, this appeal is not moot. The short duration and serial nature of Reclamation's interim water contracts place plaintiffs' claims within the mootness exception for disputes capable of repetition yet evading review. *See A.D. ex rel. L.D. v. Haw. Dep't of Educ.*, 727 F.3d 911, 914 (9th Cir. 2013).

We review de novo a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013). We also review de novo the district court's ruling on summary judgment. *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014), *cert. denied*, 134 S. Ct. 948 & 950 (2015). Claims under NEPA are reviewed under the standards of the Administrative Procedure Act, which provides that an agency action must be upheld unless it is "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)).

## I. "No Action" Alternative

The EA's "no action" alternative, which assumed continued interim contract renewal, did not comply with NEPA. A "no action" alternative may be defined as no change from a current management direction or historical practice. 43 C.F.R. § 46.30. But a "no action" alternative is "meaningless" if it assumes the existence

of the very plan being proposed. *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1038 (9th Cir. 2008). Rather, the "no action alternative looks at effects of not approving the action under consideration." 43 C.F.R. § 46.30. Here, the action under consideration was the renewal of the water delivery contracts. *See Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 784 (9th Cir. 2006) (holding that extensions of Bureau of Land Management leases permitting production of geothermal energy did not preserve the status quo where the extensions were not mandatory). *Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin.*, 126 F.3d 1158 (9th Cir. 1997), is not to the contrary. There, the "no action" alternative was not defined as the status quo of continuing existing power contracts; instead, the proposed action was a new business strategy that would result in "profound alterations in [Bonneville Power Administration's] relationships with certain large industrial customers," and the "no action" alternative analyzed in the EIS, and upheld by this court, was continued operations under the existing management strategy. *Id*. at 1163, 1168, 1188.

When an agency action is mandatory, the "no action" alternative is properly defined as the carrying out of that action. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 769 (2004). But we do not agree with the district court that the Central Valley Project Improvement Act ("CVPIA"), a part of the Reclamation Projects

4

Authorization and Adjustment Act of 1992, required Reclamation to enter into the interim contracts. The CVPIA requires "appropriate environmental review," including the preparation of a programmatic EIS ("PEIS"), before Reclamation is authorized to renew an existing long-term water service contract. CVPIA § 3404(c)(1). After the completion of the PEIS, Reclamation "shall, upon request, renew any existing long-term repayment or water service contract for the delivery of water from the Central Valley Project for a period of twenty-five years." *Id.* Prior to the completion of the PEIS, Reclamation "may" renew water service contracts for interim three- or two-year periods. *Id.* As the district court acknowledged, normally, when "may" and "shall" are used in the same statute, the "'inference is that each is being used in its ordinary sense—the one being permissive, the other mandatory.'" *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 450 F.3d 930, 935 (9th Cir. 2006) (quoting *Haynes v. United States*, 891 F.2d 235, 239-40 (9th Cir. 1989)) (interpreting Endangered Species Act). We also reject Reclamation's argument that the contracts themselves mandated renewal. NEPA imposes obligations on agencies considering major federal actions that may affect the environment. An agency may not evade these obligations by contracting around them.

Accordingly, the district court erred in dismissing plaintiffs' claim regarding the "no action" alternative.

## II. Statement of Purpose and Need

The EA's statement of purpose and need did not unreasonably narrow Reclamation's consideration of alternatives. *See Alaska Survival v. Surface Transp. Bd.*, 705 F.3d 1073, 1084 (9th Cir. 2013). The statement did not assume that contract quantities would remain the same, and it was not an abuse of discretion. *See id.*

## III. Reduction in Water Quantity

Reclamation's decision not to give full and meaningful consideration to the alternative of a reduction in maximum interim contract water quantities was an abuse of discretion, and the agency did not adequately explain why it eliminated this alternative from detailed study. *See Te-Moak Tribe of W. Shoshone of Nev. v. U.S. Dep't in Interior*, 608 F.3d 592, 602 (9th Cir. 2010); *Native Ecosys. Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1245 (9th Cir. 2005). The four reasons set forth in the EA do not establish the non-viability of the alternative of maximum water quantity reduction. *See W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1050 (9th Cir. 2013) (holding that existence of viable but unexamined alternative renders EA inadequate).

6

The first reason given by Reclamation was that the Reclamation Project Act mandates renewal of existing contract quantities when beneficially used. *See* 43 U.S.C. § 485h-1(1) & (4). The EA stated that the water districts had complied with contract terms, and, according to water needs assessments performed by Reclamation, each water district's needs equaled or exceeded the current total contract quantity. Plaintiffs exhausted administrative remedies as to their argument that Reclamation did not know whether existing water quantities were "beneficially used" because Reclamation did not conduct a proper water needs assessment, as contractually required, and Reclamation's 2006 assessment was inadequate because it was prepared with data from 1999 that predated a land retirement project. *See Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011) (holding that issue was exhausted when agency had independent knowledge of EA flaw); *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) (holding that issue is exhausted if agency is provided sufficient information to give it a chance to bring its expertise to bear to resolve the claim). As plaintiffs argue, Reclamation acted unreasonably by relying on stale water needs data. *See W. Watersheds Project*, 719 F.3d at 1052 (holding that "an agency errs when it relies on old data without showing that the data remain accurate").

Reclamation's second reason for concluding that consideration of a reduction in interim contract water quantities was not warranted was that the Central Valley Project-wide PEIS for long-term contract renewal selected a preferred alternative of renewal "for the full contract quantities." Additionally, the PEIS took into account the balancing requirements of the CVPIA, which provides, among other things, for the weighing of fish, wildlife, and habitat restoration goals. The PEIS did not, however, address site-specific impacts of individual contracts. *See W. Watersheds Project*, 719 F.3d at 1050-51 (holding that when modification of grazing practices was not considered at programmatic level, it must be given hard and careful look at site-specific level). The government's position that the consideration of reduced-quantity alternatives should be required only with respect to "long-term contract renewals" (Answering Brief at 47) is unreasonable under the circumstances presented here, involving an ongoing – and hence long-term – series of interim renewals.

Reclamation's third reason was that a shortage provision in the interim contracts provided it with a mechanism for annual adjustments in water supplies. As plaintiffs argue, however, the existence of a mechanism for adjusting water quantities after contract approval did not relieve Reclamation of its obligation to consider a reduction in quantities prior to contract approval. *See id.* at 1050.

8

Reclamation's fourth reason was that "retaining the full historic water quantities under contract provides the contractors with assurance the water would be made available in wetter years and is necessary to support investments for local storage, water conservation improvements and capital repairs." This reasoning in large part reflects a policy decision to promote the economic security of agricultural users, rather than an explanation of why reducing maximum contract quantities was so infeasible as to preclude study of its environmental impacts. *See id.* Moreover, given the shortage provisions in the interim contracts and recent drought conditions, the water districts have not been able to rely on delivery of consistent quantities.

We therefore reverse as to the district court's grant of summary judgment on plaintiffs' claim that the EA was inadequate because it did not give full and meaningful consideration to the alternative of a reduction in maximum water quantities. *See id*.

**IV. Geographic Scope**

Plaintiffs contend that the EA's geographic scope was improperly limited to the delivery areas and should also have considered the effects, including cumulative effects, of interim contract renewal on the California River Delta, the source of the water, and on the Delta's fish and other wildlife. *See Save Our*

*Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1122 (9th Cir. 2004) (holding that agency must analyze all environmental consequences of action). This contention lacks merit because the EA was tiered off of the PEIS, which addressed Central Valley Project-wide effects of long-term contract renewal. *See* 40 C.F.R. § 1508.28 (describing tiering). In light of Reclamation's obligation to conduct a more comprehensive analysis in the PEIS, it would be impractical to require the agency to trace the incremental effects of each two-year water service contract on the Delta and all Central Valley Project waters. *See Friends of the Wild Swan v. Weber*, 767 F.3d 936, 943 (9th Cir. 2014) (stating that agency must balance need for comprehensive analysis against considerations of practicality).

## V. Impacts on Listed Species and Cumulative Impacts

Plaintiffs waived their argument that the EA's analysis of the giant garter snake and the California least tern impermissibly equated a finding of no jeopardy under the Endangered Species Act with a finding of no significant impact under NEPA. *See Lands Council*, 629 F.3d at 1076. Impacts on salmonids and green sturgeon, as well as cumulative impacts related to drainage and selenium, were more appropriately addressed in the PEIS and the San Luis Drainage Feature Re-Evaluation Final EIS, rather than the EA for interim contract renewal. *See Friends of the Wild Swan*, 767 F.3d at 943.

We affirm the district court's judgment in part. We reverse in part and remand with instructions for the district court to vacate its grant of summary judgment in favor of defendants on plaintiffs' claim that the EA was inadequate because it did not give full and meaningful consideration to the alternative of a reduction in maximum water quantities. On remand, the district court shall direct Reclamation consider such an alternative in any future EA for an interim contract renewal. In satisfying this duty, Reclamation may rely upon any water needs assessment for which the data remain accurate. *See W. Watersheds Project*, 719 F.3d at 1052. We also reverse the district court's dismissal of plaintiffs' claim that the "no action" alternative set forth in the EA was inadequate under NEPA.

Each party shall bear its own costs.

**AFFIRMED in part, REVERSED in part, and REMANDED.**